UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
CSC HOLDINGS, INC,

               Plaintiff,

               -against-

BEN FUNG,

               Defendant.
-----------------------------------------------------------X

MEMORANDUM AND ORDER

CV 03-5854

(Wexler, J.)

FILED
IN CLERK'S OFFICE
U S. DISTRICT COURT E.D.N.Y

★ MAY 09 2005 ★

LONG ISLAND OFFICE

APPEARANCES:

    WU & KAO, P.L.L.C.
    BY: HAROLD W. SUCKENIK, ESQ.
    Attorneys for Defendant
    747 Third Avenue
    New York, New York 10017

    LEFKOWITZ, LOUIS & SULLIVAN, L.L.P.
    BY: SHAUN HOGAN, ESQ.
    350 Jericho Turnpike Suite 300
    Jericho, New York 11753

WEXLER, District Judge

    Plaintiff CSC Holdings, Inc. ("Plaintiff") commenced this action for violation of federal statutes that prohibit the unauthorized reception of cable television programming. Defendant Ben Fung ("Defendant" or "Fung") never filed an answer or other responsive pleading. As a consequence, a judgment of default was entered. Presently before the court, after a hearing held on March 10, 2005, is Defendant's motion, pursuant to Rule 60(b)(4) of the Federal Rules of Civil Procedure, to set aside the judgment on the ground that it is void because of invalid service.

1

## BACKGROUND

I.  Factual and Procedural History

The complaint in this action was filed in November 2003. On December 13, 2003, Plaintiff served Defendant at 42 Barker Drive, Stony Brook, New York, (the "Barker Drive House"), an addressed presumed by Plaintiff to be Defendant's residence. That belief was based, in part, upon an invoice indicating that a cable television decoding device was shipped to Defendant at that address.

Plaintiff served Defendant pursuant to Section 308(4) of New York State's Civil Practice Law and Rules ("Section 308(4)") by affixing a copy of the summons and complaint to the door of the Barker Drive House and mailing a copy of the papers to the same address. Defendant did not respond to the complaint by service of an answer. Instead, Defense counsel sent a letter dated January 9, 2004, to Plaintiff's counsel. That letter stated counsel's desire to resolve the case without "legal proceedings or unduly burdening the court." The letter further stated counsel's position that Defendant did not engage in any of the activities set forth in the complaint. Counsel requested that Plaintiff discontinue the action immediately or be faced with "the full panoply of sanctions." Despite Defense counsel's assertions as to the merits of the case, neither an answer, a motion to dismiss nor the promised motion for sanctions, were ever filed.

The next court action in this matter was a conference held on August 3, 2004, before the Honorable E. Thomas Boyle, the Magistrate Judge assigned to this case. On that day, Magistrate Judge Boyle entered an order noting Defense counsel's assertions regarding the insufficiency of service. The order further noted that despite this assertion, counsel never filed an answer or motion properly raising this defense. In light of counsel's failure to place the issue of personal

jurisdiction properly before the court, Magistrate Judge Boyle held that Plaintiff was "authorized to submit papers in support of a motion for default."

Rather than seeking an immediate judgment of default, Plaintiff's counsel requested that Defense counsel accept service on behalf of his client. In a letter dated August 10, 2004, Defense counsel rejected that invitation and stated his intention to oppose any application for a default on the ground that service was invalid because Defendant had not lived at the place of service for over ten years.

Thereafter, Plaintiff moved for entry of a judgment of default and that motion was granted by this court on August 13, 2004. The parties were ordered to appear for an inquest to be held on September 22, 2004. In a letter dated August 23, 2004, Defense counsel wrote to this court setting forth the intent to move to vacate the judgment of default. The court adjourned the September 22, 2004 inquest and, instead, ordered the parties to appear for a pre-motion conference on September 8, 2004. The parties thereafter briefed the motion to set aside the judgment of default. That motion was the subject of a memorandum and order of this court issued in December of 2004 (the "December Order"). The December Order noted the procedural history and relevant law and held that a hearing was required to determine facts to properly dispose of the motion to vacate the default. Having held the hearing, the court is now prepared to rule on the merits of the motion.

## DISCUSSION

I.  Legal Principles

   A.  Rule 60(b)(4)

The legal principles governing to a motion pursuant to Rule 60(b)(4) of the Federal Rules

3

of Civil Procedure ("Rule 60(b)(4)") to set aside a judgment of default are detailed in the December Order. Briefly stated, Rule 60(b)(4) provides that, on motion and "upon such terms that are just," a court may relieve a party from a final judgment if "the judgment is void." Fed. R. Civ. P. 60(b)(4). A motion pursuant to Rule 60 is addressed to the discretion of the trial court and is generally granted only upon a finding of exceptional circumstances. Williams v. New York City Dep't. of Corrections, 219 F.R.D. 78, 83-84 (S.D.N.Y. 2003); see Flaherty v. Hackeling, 221 F.R.D. 383, 386 (E.D.N.Y. 2004). Where, as here, defendant argues improper service, he bears the burden of proof. Velez v. Vassallo, 203 F. Supp.2d 312, 324-25 (S.D.N.Y. 2002) see also Sony Corp. v. Elm State Elec., Inc., 800 F.2d 317, 320 (2d Cir. 1986).

### B. CPLR Section 308(4)

The relevant service statute, CPLR Section 308(4), provides for service upon an individual by affixing the summons and complaint to the door of either the individual's "dwelling place" or "usual place of abode" and by thereafter mailing those papers to the defendant's "last known residence." Service is alleged to have been completed by Plaintiff, pursuant to Section 308(4), at the Barker Drive House.

Prior to the hearing, Defendant contested service, not with a personal affidavit, but with an affidavit signed by Singhien Fong (the "Fong Affidavit"). The Fong Affidavit indicated the affiant's acquaintance with Defendant by portraying him as a "relative" who did not reside at the Barker Drive House. The affidavit stated further that Fong had "no knowledge of [Fung's] current address" but that Defendant is seen at "family gatherings" and is to believed to reside on Long Island. Also submitted in conjunction with the motion was an attorney's affidavit. Annexed thereto was the deed to the Barker Drive House. The attorney affidavit described the

4

deed and noted that Fong, his wife and an individual named Jenny Tehuey Fung own the Barker Drive House. Like the Fong Affidavit, the attorney affidavit referred to these owners as individuals who are "believed to be three relatives" of the Defendant.

Upon review of the papers submitted in connection with the motion to set aside the default, this court held, in the December Order, that a hearing was necessary to determine whether the Barker Drive House satisfied the statutory definition of Defendant's "dwelling place" "usual place of abode" or "last known residence."

II. The Hearing

Defendant Fung testified at the hearing, as did an employee of Plaintiff who established the company's reasonable belief as to Defendant's residence. Fung testified that while he had lived in the Barker Drive House in the past, he had not lived there since 1995. In support, Defendant submitted his driver's license, a car lease and bank statements – each of which indicated that he lived elsewhere at the time of service. Fung also submitted the birth certificate of his son, born in 2003, indicating an address other than the Barker Drive House.

Fung testified that the Barker Drive House is a home owned by his parents. It thus became clear at the hearing that Singhien Fong, the "relative" who submitted the affidavit in connection with Defendant's initial motion papers, was more than a casual acquaintance. He was, in fact, Defendant's father. Fung attempted to explain, with neither detail nor credibility, why his father would refer to his son only as a "relative" who is seen only at an occasional "family gathering." Contrary to the position taken in the Fong Affidavit, Fung stated that his father did, indeed, know, with greater specificity than set forth in the affidavit, where his son resides. While Fung stated that his father was "very busy," he conceded that he had, at the very

5

least, visited with his grandchild. Importantly, Fong's grandson was born in April 2003, more than a year prior to the submission of the Fong Affidavit.

Cross-examination and the direct testimony of Plaintiff's witness showed that despite Defendant's apparent relocation, he continues, in official documents, to indicate his continuing residence at the Barker Drive House. Those documents are Defendant's professional dental registration papers, filed with the State Education Department ("SED"), as well as a license issued by the Drug Enforcement Agency ("DEA"). Indeed, it was these documents, along with the previously mentioned invoice, upon which Plaintiff relied when serving Defendant at the Barker Drive House. When asked why he continued to list the Barker Drive House as his residence, Fung stated only that he had neglected to update his registration.

III.  Disposition of the Motion

Were this motion a traverse hearing held after a timely interposed motion to determine the propriety of service, the court would have little difficulty holding that the Barker Drive House qualified as neither Defendant's "dwelling place" "usual place of abode" or "last known residence" at the time of service. The procedural posture of this motion to set aside a default and the unique facts of this case, however, leads the court to a different conclusion. For the reasons that follow, the court holds that Defendant is estopped, by his behavior, as demonstrated by the procedural history and facts established at the hearing, from claiming that service at the Barker Drive House was improper.

The doctrine of equitable estoppel is "grounded on notions of fair dealing and good conscience and is designed to aid the law in the administration of justice where injustice would otherwise result." <u>Vebeliunas v. Vebelianas</u>, 332 F.3d 85, 93-94 (2d Cir. 2003), quoting, <u>In re</u>

6

Ionosphere Clubs, Inc., 85 F.3d 992, 999 (2d Cir. 1996). The doctrine prevents a party from asserting a position where he has engaged in behavior calculated to create a false impression with the "intention or at least expectation that such conduct shall be acted upon by the other party," and knowledge of the actual facts. The party asserting estoppel must show a lack of knowledge of the true facts, and reliance leading to a prejudicial change in position. Id. at 93-94; see also First Union Nat'l. Bank v. Tecklenburg, 769 N.Y.S.2d 573, 577 (2d Dep't 2003); Brelsford v. USAA, 734 N.Y.S.2d 707, 708 (3d Dep't 2001); Health-Loom Corp. v. Soho Plaza Corp., 709 N.Y.S.2d 165,167 (1st Dep't 2000).

Here, Defendant's conduct prior to and after the entry of default, and Plaintiff's reliance thereon, supports application of equity to estop Plaintiff from taking the position stated at the hearing regarding the Barker Drive House. As noted above, Defendant had actual knowledge of this lawsuit as early as January 2004. Instead of answering, seeking an extension of time to answer or moving to dismiss on the ground of improper service, counsel chose the procedurally ineffective tactic of writing a letter, threatening Plaintiff with sanctions if the company proceeded with the lawsuit. Defendant then appeared at a conference before Magistrate Judge Boyle, through counsel. Judge Boyle noted Defendant's failure to answer or make an appropriate motion, and authorized the submission of default papers. Rather than seeking an immediate default, Plaintiff extended the courtesy of allowing counsel to accept service, even at that late date, so that the merits of this matter could be litigated. Again, Defendant made the conscious decision to neglect procedure.

It was not until an inquest was scheduled that Defendant finally chose to make the propriety of service an issue. That attempt, however, was as ineffectual as the earlier letter-

7

writing. Instead of submission of a personal affidavit testifying as to his residence (which may very well have ended the matter), Defendant chose to contest service by submission only of the Fong Affidavit. As was revealed at the hearing, that affidavit was, to say the least, disingenuous. Fong is Defendant's father. The notion that Defendant is a "relative" who is spotted occasionally at family gatherings is completely without credibility. Indeed, at the hearing defense counsel attempted to distance himself from the Fong Affidavit, stating that he was "astonished" by its submission and characterizing it as an attempt of an attorney at his firm to be "cute." The court recognizes that Fong did not testify and, indeed, is not a defendant in this matter. Responsibility for submission of this misleading affidavit, however, must lie somewhere – either with the Defendant, his counsel or both.

Defendant's testimony and related documents revealed that Plaintiff was entirely reasonable in believing that Defendant resided at the Barker Drive House. Defendant is a dentist who is required, by state law, to be licensed and registered with the SED. All papers on file with that agency (which were requested to be subpoenaed by this court) state that Defendant maintains his residence at the Barker Drive House. Defendant's initial application for his professional license and first registration was filed in 1996. Despite the fact that Defendant testified that he did not live at the Barker Drive House since 1995, the 1996 initial SED registration papers state Defendant's address to be the Barker Drive House. Fung's assertion that he has neglected to "update" his registration does nothing to explain why his these initial papers list a false address.

Similarly, Defendant's initial registration with the DEA, filed in 1997, listed the Barker Drive House as his address. As set forth in a declaration submitted by the DEA to the court, the address listed in a professional's DEA's license is the office from which controlled substances

8

are dispensed. Since Defendant testified that he did not live at the Barker Drive House in 1997, and never maintained a professional office at that address, the DEA registration there was never accurate.

In view of these facts, it is not surprising that Plaintiff relied on Defendant's filings with the SED and DEA when attempting service. It is also not surprising that Plaintiff made no further attempt at service. Plaintiff was fully within its rights in filing for and pursuing a judgment of default. Had Defendant taken a different course of action, this court, and indeed, the Magistrate Judge, may well have prohibited entry of a judgment of default. Defendant's behavior, however, taking action calculated only to delay the matter and mislead both Plaintiff and the court, dictates a different result.

Based upon the foregoing, the court holds that Defendant's conduct was calculated to create a false impression regarding his actual residence. There was knowledge, or at least the expectation, that Plaintiff would act on this false impression or, more specifically, fail to act and continue to rely on the Barker Drive House as Defendant's actual residence. Accordingly, the court holds that equitable estoppel bars Defendant's position and requires that the motion to set aside the judgment of default be denied.

The court's holding here, prohibiting Defendant from denying that service at the Barker Drive House was proper, should not be read as upholding the propriety of service in every case where a professional fails to update an official registration document. The court can certainly envision circumstances where such behavior can be excused. The holding here is limited to the particular facts of this matter. Equity is applied because of Defendant's conduct throughout this litigation and not simply because an official form contains inaccurate information.

## CONCLUSION

For the foregoing reasons, the court denies Defendant's Rule 60(b) motion. The judgment of default will stand. The parties are directed to contact the court, within two weeks of the date of this order, for the purpose of scheduling the inquest that was adjourned in September of 2004 to determine the merits of this motion. At the inquest the court will determine damages as well as the propriety of the imposition of any sanctions upon Defendant, counsel or both.

SO ORDERED.

LEONARD D. WEXLER
UNITED STATES DISTRICT JUDGE

Dated: Central Islip, New York
May 9, 2005